*853 ON APPELLEE’S MOTION FOR REHEARING, REHEARING EN BANC, AND CERTIFICATION OF A QUESTION OF GREAT PUBLIC IMPORTANCE
PER CURIAM.
The District Board of Trustees of Santa Fe College, Florida (the College), Appel-lee, has moved for rehearing, rehearing en banc, and certification of a question of great public importance. We grant the motion for rehearing to affirm the trial court’s dismissal of Count One; the motions for rehearing en banc and certification are denied. We withdraw our prior opinion and substitute the following opinion in its place.
Darnell Rhea appeals an order dismissing his second amended complaint, with prejudice, in his lawsuit against the College. Rhea’s pleading comprised a petition for writ of mandamus alleging a violation of Florida’s public records laws (Count One) and a petition for declaratory judgment alleging a violation of a college rule (Count Two). Concluding, as the trial court did, that Rhea has not stated a cause of action in either count, we affirm the dismissal order.
I. Pleadings and Procedural History
The second amended complaint alleged two claims. Count One, titled “Petition for Writ of Mandamus Violation of the Public Records Act,” alleged that from August to December 2009, Rhea was an adjunct associate professor under the supervision of the Chairman of the Academic Foundations Department (the Chair) at the College, a state college created and operated under chapter 1001, Florida Statutes. On September 28, 2009, Rhea asked the Chair for a complete copy of a certain e-mail received in the normal course of the Chair’s employment with the College. Rhea had previously received a copy of the e-mail with the name of the student author redacted. The Chair refused to comply with Rhea’s repeated requests to disclose the author’s name, on the ground that the student’s identity is protected from disclosure under the protection provided for education records in the Family Educational Rights & Privacy Act (FERPA), 20 U.S.C. section 1232g (2009). The student gave no written consent to disclosure of his or her name. Count One alleged the e-mail, including the student’s name, is a public record and, by refusing to disclose the complete, unredacted public record to Rhea, the College violated the law.
The e-mail in question complains of Rhea’s inappropriate classroom behavior, his humiliating remarks to the students, and his unorthodox teaching methodologies. Rhea denied all of the negative email allegations. He alleged, however, that he was effectively prevented from defending himself by demonstrating that the unnamed student was not in a position to comment fairly and accurately on his teaching methods and classroom conduct. Rhea asserted that neither the Florida statutes nor FERPA protects from disclosure the name of a student who writes an e-mail like the one in question. Rhea argued that pursuant to FERPA, a student’s complaint about the teaching methods and classroom behavior of a public, postsecond-ary school employee who is not a student at the school is not an education record because it relates only tangentially, not directly, to the student. It is, instead, solely a teacher record and thus is not protected from disclosure under FERPA.
Count One alleged further that as a result of the Chair’s unlawful refusal to give Rhea the unredaeted e-mail, the College did not rehire Rhea, and he suffered damages. Count One requested a jury trial, damages, and attorney’s fees and costs. This count also asserted Rhea’s *854 right to a writ of mandamus requiring the College to give him the complete record of all complaints from any student that Rhea’s supervisors at the College have received.
Count Two is titled “Petition for Declaratory Judgment Violation of Agency Rules.” Rhea alleged that while the College is authorized to make rules that have the force of law, it has a corresponding duty to abide by its own rules. He sought a declaration of his rights under the College’s rule 7.36 of the “Student Complaint Procedure: Students and Administration,” which sets out procedures for students who wish to register a complaint against any employee of the College. The second count alleged that Rhea had a right under rule 7.36 to discuss any complaint from a student and to seek resolution of the complaint, before Rhea’s supervisor heard of or saw the student’s concern or complaint. The pleading asserted that the College had violated rule 7.36 and its duty to follow its own rules, as a result of which Rhea was not rehired and suffered personal harm. In addition to the request for declaratory relief, Count Two requested a jury trial, damages, and attorney’s fees and costs.
The College moved to dismiss both counts of the second amended complaint with prejudice and to strike Rhea’s claims for attorney’s fees and damages. After a hearing on the motions to dismiss and to strike, the trial court concluded, on Count One, that state and federal law do not require the College to provide Rhea with an unredacted copy of the e-mail. According to the court, the College is bound by state and federal law proscribing the College’s disclosure of an unredacted copy containing the student author’s name. On Count Two, the court found no justiciable issue as to the existence of any right Rhea may have under rule 7.36, nor did the court find a bona-fide, actual, and present need for a declaration. Because the second amended complaint represented Rhea’s third attempt to file a legally sufficient claim, and it was deemed inadequate, the trial court exercised its discretion to dismiss the latest pleading with prejudice. Boca Burger, Inc. v. Forum, 912 So.2d 561, 567 (Fla.2005). In light of the dismissal with prejudice, the court ruled the motions to strike were moot. This appeal followed.
II. Analysis
A motion to dismiss raises a question of law as to whether the facts alleged in the complaint are sufficient to state a cause of action. Meyers v. City of Jacksonville, 754 So.2d 198, 202 (Fla. 1st DCA 2000). In considering the legal sufficiency of a complaint, the trial court’s view is limited to the four corners of the complaint, the factual allegations of which are to be accepted as true. Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla.1956). In doing so, the trial court must resolve all reasonable conclusions or inferences in favor of the plaintiff, as the non-moving party. Weaver v. Leon Cnty. Classroom Teachers Ass’n, 680 So.2d 478, 481 (Fla. 1st DCA 1996). It is well established that dismissal of a complaint with prejudice is a very severe sanction, to be invoked only when the pleader has failed to state a cause of action and it is conclusively shown the complaint cannot be amended in such a way as to state a claim. Meyers, 754 So.2d at 202. The standard of review for an order dismissing a complaint for failure to state a cause of action is de novo. Hernandez v. Tallahassee Med. Ctr., Inc., 896 So.2d 839, 841 (Fla. 1st DCA 2005); Landrum v. John Doe Pit Digger, 696 So.2d 926, 928 (Fla. 2d DCA 1997) (stating that the district court’s review of the trial court’s dismissal order is limited to determining whether the complaint stated a cause of action).
*855 A. Count One: “Petition for Writ of Mandamus Violation of the Public Records Act”
To be entitled to a writ of mandamus, Rhea must establish that “he has a clear legal right to the performance of a clear legal duty by a public officer and that he has no other legal remedies available to him.” Hatten v. State, 561 So.2d 562, 563 (Fla.1990); see Plymel v. Moore, 770 So.2d 242, 246 (Fla. 1st DCA 2000). Mandamus has been described as “a remedy to command performance of a ministerial act that the person deprived has a right to demand, or a remedy where public officials or agencies may be coerced to perform ministerial duties that they have a clear legal duty to perform.” Town of Manalapan v. Rechler, 674 So.2d 789, 790 (Fla. 4th DCA 1996). For purposes of mandamus relief, a duty or act is ministerial when no room exists for the exercise of discretion and the law directs the required performance. Shea v. Cochran, 680 So.2d 628, 629 (Fla. 4th DCA 1996). Applied to the instant case, the law of mandamus required the trial court to determine whether Rhea alleged sufficient facts to state a claim that he has a clear legal right to the unredacted copy of the e-mail and that the College has a clear legal duty to provide it to him.
On the question of whether Count One states a cause of action, we look first to Florida public records law. Where purely legal issues of whether a document is a public record and subject to disclosure are involved, we have de novo review. State v. City of Clearwater, 863 So.2d 149, 151 (Fla.2003); Media Gen. Convergence, Inc. v. Chief Judge of the Thirteenth Judicial Circuit, 840 So.2d 1008, 1013 (Fla.2003).
A citizen’s access to public records is a fundamental constitutional right in Florida. Article I, section 24(a) of the Florida Constitution (the “Sunshine Amendment”) grants [e]very person ... the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf.” This “self-executing” right to open records is enforced through the Public Records Law, chapter 119 of the Florida Statutes. It is the duty of each agency[1] to provide access to such records. § 119.01(1), Fla. Stat. (2009).
The Florida Supreme Court has construed the definition of public records to encompass all materials made or received by an agency, in connection with official business, which are used to “perpetuate, communicate or formalize knowledge of some type.” Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc., 379 So.2d 633, 640 (Fla.1980). The physical format of the record is irrelevant; electronic communications, such as e-mail, are covered just like communications on paper. See § 119.01 (2)(a), Fla. Stat. (2009) (“[a]u-tomation of public records must not erode the right of access to those records”); Nat’l Collegiate Athletic Ass’n v. Associated Press, 18 So.3d 1201, 1207 (Fla. 1st DCA 2009) (observing that “public records law is not limited to paper documents but that it applies, as well, to documents that exist only in digital form”). Because Rhea alleged that the e-mail at issue is a com- *856 munieation that was sent to, and received by, the College in connection with the transaction of its official business, he has sufficiently pled that it is a Florida public record subject to disclosure in the absence of a statutory exemption.
An exemption to Florida’s Public Records Law exists for a student’s “education records.” This exemption provides that “[a] public postsecondary educational institution may not release a student’s education records without the written consent of the student to any individual ..., except in accordance with and as permitted by the FERPA.” § 1006.52(2), Fla. Stat. (2009). The Legislature has adopted FERPA’s definition of “education records.” § 1002.225(1), Fla. Stat. (2009). Thus, it was incumbent upon the trial court to look to FERPA, 20 U.S.C. section 1232g, to determine whether Rhea stated a cause of action that the unredacted e-mail must be disclosed, i.e., that the College must reveal the student’s name.
FERPA protects “education records” (and personally identifiable information contained therein) from improper disclosure.[2] Such records generally include “those records, files, documents, and other materials which ... (i) contain information directly related to a student and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.” 20 U.S.C. § 1232g(a)(4)(A)(i)-(ii) (emphasis added). “Education records” do not include,
in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person’s capacity as an employee and are not available for use for any other purpose.
20 U.S.C. § 1232g(a)(4)(B)(iii).
Rhea contends that the e-mail at issue does not directly relate to its student author, and for this reason is not an “education record” within the meaning of FER-PA. For support, Rhea relies on Ellis v. Cleveland Municipal School District, 309 F.Supp.2d 1019 (N.D.Ohio 2004), and other cases adopting its rationale. The Ellis line of cases differentiates records that contain information “directly related to a student,” on the one hand, from records that are directly related to a teacher or other school employee and are only peripherally or tangentially related to a student, on the other. According to these federal authorities, the former are “education records” by definition; the latter are not. See, e.g., Ellis, 309 F.Supp.2d at 1022-23.
The issue in Ellis was whether FERPA covered incident reports related to physical altercations between substitute teachers and students, student and employee witness statements related to these incidents, and information related to subsequent discipline, if any, imposed on the teachers. Id. at 1021. Addressing “teacher discipline information,” the court explained:
In her document requests, plaintiff seeks records involving allegations of physical altercations engaged in by substitute teachers as well as student and employee witness statements related to those altercations.... Such records do not implicate FERPA because they do not contain information “directly related to a student.” While these *857 records dearly involve students as alleged victims and witnesses, the records themselves are directly related to the activities and behaviors of the teachers themselves and are therefore not governed by FERPA.
Id. at 1022-23 (internal citations and quotation marks omitted) (emphasis added). Ellis stands for the proposition that “FERPA applies to the disclosure of student records, not teacher records.” Id. at 1022.
The federal district court in Wallace v. Cranbrook Educational Community, No. 05-73446, 2006 WL 2796135 (E.D.Mich. Sept. 27, 2006), drew a similar distinction between employee records and student records in its review of a magistrate judge’s order compelling discovery. Cran-brook Educational Community (Cran-brook), relying primarily on students’ statements alleging inappropriate employee behavior, terminated Wallace’s employment as a school maintenance person and equipment mover. 2006 WL 2796135 at *1. After Wallace filed a complaint alleging improper termination, Cranbrook provided him with copies of the students’ statements, with their names and addresses redacted. Id. Wallace moved to compel disclosure of the students’ identities, and a magistrate judge ordered the relief Wallace sought. Id. Cranbrook objected to the magistrate judge’s disclosure order, citing FERPA and other confidentiality and privacy concerns. Id.
Relying on Ellis, the Wallace court concluded that the student statements did not “directly relate to students” and were therefore not “education records” under FERPA. Id. at *4. The court noted that the statements were not education records for the additional reason that they related to Wallace in his capacity as an employee and thus qualified as an exception pursuant to 20 U.S.C. section 1232g(a)(4)(B)(iii). Because the records were not education records, the court found “no reason to redact the statements as they are not protected from disclosure by FERPA.” 2006 WL 2796135 at *6. Accordingly, the district court judge affirmed the disclosure order. Id. at *5-6, *8.
Like the courts in Ellis and Wallace, we believe the plain language of FERPA supports the distinction between information that is directly related to a student and that which is related to a student only tangentially or indirectly. By including the qualifier “directly” before “related,” Congress excluded by inference any information relating only indirectly to a student from the purview of the information covered under the “education records” definition. See Gay v. Singletary, 700 So.2d 1220, 1221 (Fla.1997) (explaining doctrine of inclusio unius est exclusio alterius); Smith v. State, 982 So.2d 69, 70 & n. 1 (Fla. 1st DCA 2008) (noting that the express inclusion of one thing in a statute implies the exclusion of its opposite).
The scope of the words “directly related” is still, however, quite broad. See United States v. Miami Univ., 294 F.3d 797, 812 (6th Cir.2001). Information is directly related to a student if it has a close connection to that student. See Merriam-Webster’s Collegiate Dictionary 353-54 (11th ed. 2004) (defining “direct” in relevant part as “characterized by close, logical, causal, or consequential relationship”; defining “directly” as “in a direct manner”). Because “directly related” encompasses far more information than might be accorded privacy in most other contexts, Rhea’s invitation to limit its scope is compelling. Further, Ellis lends support for this position. But to the extent that Ellis converts the “directly related” inquiry into a “primarily related” test, we disagree with its approach, despite its *858 acceptance by other courts.[3] A plain-language interpretation of FERPA requires us to depart from the Ellis reasoning as applied to the factual allegations of this case.[4]
According to the allegations in Rhea’s complaint, the unredacted e-mail he seeks to obtain identifies the student and the student’s enrollment in his class. Further, the e-mail describes that student’s personal impressions of the classroom educational atmosphere in the context of Rhea’s teaching and methodology. The student’s knowledge of, and connection to, the information conveyed in the e-mail is not merely peripheral or tangential. As a member of the class, the student claimed to have experienced the treatment described in the e-mail, and the e-mail is the student’s own words. Although Rhea may be the primary subject of the e-mail, the e-mail also directly relates to its student author.
We reject any suggestion advanced by Rhea that a record cannot relate directly both to a student and to a teacher. If a record contains information directly related to a student, then it is irrelevant under the plain language in FERPA that the record may also contain information directly related to a teacher or another person.[5] While FERPA makes clear that certain employee records are not included within the definition of “education record,” to be removed from the ambit of the “education record” definition, those employee records must relate exclusively to the employee in his or her capacity as an employee. 20 U.S.C. § 1232g(a)(4)(B)(iii). The allegations in Rhea’s complaint do not support the application of this narrow language.
In dismissing Count One with prejudice, the trial court concluded that, having been given several opportunities to amend his pleading, Rhea failed to state a claim that the unredacted e-mail is not directly related to a student for purposes of FERPA. Because the plain, unambiguous language of section 1232g(a)(4)(A)(i) compels the trial court’s ruling, we affirm the dismissal with prejudice.[6]
*859 B. Count Two: “Petition for Declaratory Relief Violation of Agency Rules”
Rhea’s second count sought declaratory relief. Circuit courts have jurisdiction “to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed.” § 86.011, Fla. Stat. (2009). As the party seeking a declaration of rights, Rhea has the burden to demonstrate entitlement. Groover v. Adiv Holding Co., 202 So.2d 103, 104 (Fla. 3d DCA 1967).
To be entitled to a declaratory judgment, Rhea must demonstrate that (1) a good-faith dispute exists between the parties; (2) he presently has a justiciable question concerning the existence or nonexistence of a right or status, or some fact on which such right or status may depend; (3) he is in doubt regarding his right or status under the College’s rule 7.36; and (4) a bona-fide, actual, present, and practical need for the declaration exists. May v. Holley, 59 So.2d 636, 639 (Fla.1952); State Farm Mut. Auto. Ins. Co. v. Wallace, 209 So.2d 719, 721 (Fla. 2d DCA 1968). The sufficiency of Rhea’s allegations depends not on whether the pleading demonstrates he will succeed in getting a declaration of rights under his assertions, but on whether the law even entitles him to a declaration of rights. Rosenhouse v.1950 Spring Term Grand Jury, 56 So.2d 445, 448 (Fla.1952).
Rhea sought a declaration of his rights under the College’s rule 7.36. For students who want to register a complaint against any employee of the College, the rule’s procedures require the student, first, to “[sjtate the complaint to the College employee involved and attempt to resolve the problem.” Only if the problem remains unresolved is the student to proceed to the next step, contacting the College employee’s immediate supervisor or a counselor for assistance. The rule also dictates the procedure the administration is required to take upon receipt of a complaint or concern.
Defending against Count Two, the College argued that the student’s e-mail did not rise to the level of a complaint and never triggered the mandatory procedures in rule 7.36. Specifically, the College characterized the e-mail as an informal student comment or concern, rather than a filed, formal complaint.
We need not determine what right Rhea may have had to a declaration under rule 7.36 when he discovered the student author of the e-mail had proceeded directly to the administration without attempting first to resolve the issues with Rhea. A petition for declaratory relief must show “some useful purpose will be served” by the relief sought. Kendrick v. Everheart, 390 So.2d 53, 59 (Fla.1980). Because declaratory relief generally is not appropriate where the alleged controversy is moot, Ashe v. City of Boca Raton, 133 So.2d 122, 124 (Fla. 2d DCA 1961), a trial court must ensure that the controversy between the parties is “definite and concrete.” Green Party of Alaska v. State, Div. of Elections, 147 P.3d 728, 732-33 (Alaska 2006). Rhea is no longer an employee of the College, and the student author of the e-mail is no longer a student at the College. The trial court correctly ruled that Rhea failed to make a prima facie showing that any present, justiciable question exists regarding his rights and a good-faith, actual, present, and practical need for a declaration exists. Given Rhea’s failure to state a cause of action in Count Two, the trial court properly dismissed the count with prejudice.
*860 We AFFIRM the dismissal of Counts One and Two with prejudice.
LEWIS, ROBERTS, and RAY, JJ., concur.

. Appellee, which is part of the state system of community colleges established and governed by chapter 1001, Part III, Florida Statutes (2009), is a state agency. § 119.011(2), Fla. Stat. (2009) (defining agency as "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law ... and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency”).

. FERPA, commonly known as the “Buckley Amendment,” does not prohibit disclosure of education records. Rather, it provides for the withholding of federal funds from educational institutions that have a policy or practice of permitting the release of such records. 20 U.S.C. § 1232g(b)(l).

. See, e.g., Briggs v. Bd. of Trs. Columbus State Cmty. Coll., No. 2:08-CV-644, 2009 WL 2047899, at *5 (S.D.Ohio July 8, 2009) (concluding that student complaints about a professor did not directly relate to students and thus were not "education records”); Wallace v. Cranbrook Educ. Cmty., No. 05-73446, 2006 WL 2796135, at **3-6 (E.D.Mich. Sept. 27, 2006) (holding that "student statements provided in relation to an investigation into a school employee’s alleged misconduct” are not directly related to the students); Hampton Bays Union Free Sch. Dist. v. Pub. Emp’t Relations Bd., 62 A.D.3d 1066, 878 N.Y.S.2d 485, 488-89 (N.Y.App.Div.2009) (affirming a ruling that documentation relating to a probationary teacher’s early termination based on misconduct was subject to disclosure and was not an education record protected from release under FERPA).

. Although this Court relied on the Ellis court’s distinction between directly and tangentially related information to require the disclosure of certain documents in National Collegiate Athletic Association v. Associated Press, 18 So.3d 1201, 1210-11 (Fla. 1st DCA 2009), we expressly limited our holding to the disclosure of versions of the documents with the students' names redacted.

. Rhea did not assert any due-process right to know the student author’s identity in the context of a college formal disciplinary proceeding. The narrow issue presented by Rhea on appeal in this count is whether the e-mail contains information "directly related” to a student, triggering FERPA protections and exempting this record from Florida’s chapter 119 requirements. We express no opinion as to whether the requirements of due process could, in some instances, supersede FERPA.

. Given that the trial court’s dismissal order addressed only Rhea’s request for disclosure of "the e-mail in question” and the court did not rule on the broader request for disclosure of any other student complaints made about Rhea, we confine our discussion to the redacted student e-mail addressed in the trial court. *859 Miller v. Miller, 709 So.2d 644, 645 (Fla. 2d DCA 1998).