# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D21-985
_____

ANTOINE SALAMEH, D.C.,

Petitioner,

v.

FLORIDA DEPARTMENT OF
HEALTH,

Respondent.

_____

Petition for Writ of Mandamus—Original Jurisdiction.



September 29, 2021

PER CURIAM.

The petition for writ of mandamus is dismissed in part and denied in part. Petitioner's request to require the Florida Department of Health to withdraw its administrative complaint is dismissed as moot. The Court denies Petitioner's alternate request to require the Department to maintain the administrative complaint and investigative files as confidential. Based on the proceedings in this case and by operation of section 456.073(10), Florida Statutes, those records are no longer confidential and are not exempt from public disclosure.

ROWE, C.J., and OSTERHAUS, J., concur; MAKAR, J., concurs in result with opinion.

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

MAKAR, J., concurring in result.

At issue is an emergency petition and confidentiality motion filed in this Court seeking to prevent the Florida Department of Health from publicly posting a one count administrative complaint against Dr. Antoine Salameh because the Department's probable cause panel failed to comply with the statutory mandate that it consider the exculpatory materials that Dr. Salameh had timely provided in his response. *See* § 456.073(10), Fla. Stat. (2021). The Department concedes an error occurred—a serious one that denied Dr. Salameh his statutory right to defend himself—but contends that this Court cannot remedy it by issuing a writ of mandamus; it goes further and asserts that even the Department itself is powerless to correct the violation by withdrawing the administrative complaint or withholding its public release until Dr. Salameh's exculpatory information can be considered. Subsequent developments have rendered part of the relief that Dr. Salameh seeks as moot and part of the relief that Dr. Salameh seeks as unavailable; yet the important question of statutory interpretation remains and merits discussion.

I.

An investigation began in June 2020 after the Department received a patient complaint against Dr. Salameh. Florida law creates a statutory right for the subject of an investigation to submit a response to the complaint that the probable cause panel is *required* to consider in making the determination whether probable cause exists and whether a formal administrative complaint should be filed against the subject. § 456.073(1), Fla. Stat. ("The subject may submit a written response to the information contained in such complaint or document within 20 days after service to the subject of the complaint or document. *The*

2

*subject's written response shall be considered by the probable cause panel.*" (emphasis added)).

Dr. Salameh's legal counsel submitted a lengthy and detailed response in July 2020, but it was not provided to the probable cause panel. Instead, the probable cause panel met eight months later on March 23, 2021, issuing its probable cause determination that same day, based solely on the initial investigation without Dr. Salameh's response.

Up until a finding of probable cause, the investigative proceedings are exempt from public disclosure as are the complaint and information obtained in the Department's investigation, which are deemed confidential.[1] A ten-day period is triggered on the date probable cause is found (here, March 23, 2021), after which confidentiality is lost and the administrative complaint and related information become public, meaning a right of public access attaches. §§ 456.073(4) & (10), Fla. Stat.

On March 24th, the day after the 10-day clock began running, the Department mailed the administrative complaint to Dr. Salameh, which was received five days later on March 30th. Upon receipt of the administrative complaint, Dr. Salameh's legal counsel immediately contacted the Department and first learned that the probable cause panel was not given the response from Dr. Salameh that it was statutorily required to consider. He asked the Department in writing to withdraw the administrative complaint so that Dr. Salameh's response could be considered; he also asked

---

[1] Subsection (10) states that the "complaint and all information obtained pursuant to the investigation by the department are confidential and exempt from [the public records laws] until 10 days after probable cause has been found to exist by the probable cause panel or by the department, or until the regulated professional or subject of the investigation waives his or her privilege of confidentiality, whichever occurs first." § 456.073(10), Fla. Stat. Subsection (4) states in part that "[a]ll proceedings of the panel are exempt from s. 286.011 until 10 days after probable cause has been found to exist by the panel or until the subject of the investigation waives his or her privilege of confidentiality." *Id.* § 456.073(4).

that the Department not post the administrative complaint on its website and maintain the confidentiality of the investigative process until the probable cause panel had reviewed and considered the response. The Department declined, indicating that it could not do so.

On Friday, April 2nd, legal counsel for Dr. Salameh filed a petition with this Court seeking a writ of mandamus to force the Department to withdraw the administrative complaint to prevent it from becoming public and causing irreparable harm arising from the Department's violation of his right to have his response considered as section 456.073(1) requires; a motion to maintain these proceedings as confidential was also filed. The petition was filed at 5:23:49pm but was not immediately served on the Department. Nor was the petition filed as an "emergency" or a "time sensitive" matter, which are both designations available on the Court's e-filing portal.

As a result, the petition was not acted upon until the following Monday, April 5th, when, at 9:37am, the clerk's office sent out an acknowledgement letter and a show cause order directed to the Department soon followed. At that point, however, the Department had just publicly posted administrative complaints on its website, including the one against Dr. Salameh.

Two days later, on April 7th, the Department filed its response to this Court's order to show cause, admitting that a violation occurred. It urged, however, that because the probable cause panel now had Dr. Salameh's response to be considered at a rehearing set for Wednesday, April 14th, that judicial intervention was unnecessary. Issuance of a writ of mandamus was unnecessary, the Department contended, because the appropriate remedy was to rehear the matter with the formerly excluded response from Dr. Salameh. The Department also contended that its public posting and the public nature of the administrative complaint barred it, as well as a court, from taking any remedial action; it pointed out that if no probable cause was found on rehearing, the "Administrative Complaint will be dismissed and removed from the Petitioner's licensure profile." Dr. Salameh filed an authorized reply, stating that he was irreparably harmed without judicial action because the wrongful public disclosure of the administrative complaint

4

arose from a blatant due process violation that courts are empowered to remedy.

This Court set oral argument for Monday, April 12th, to explore the important issues in this case as well as what appeared at the time to be "the disclosure of the administrative complaint at issue during the pendency of this proceeding."

Two days after oral argument, the probable cause panel met to rehear its initial finding of probable cause, this time considering Dr. Salameh's response for the first time. According to a status report filed in this case, the panel on rehearing found insufficient evidence to support a finding of probable cause against Dr. Salameh and thereby dismissed the case and removed the formerly filed administrative complaint from its website; the status report did not indicate whether the administrative complaint remained a publicly available record.

In response, this Court issued a show cause order seeking to determine whether to dismiss this proceeding as moot "in light of the probable cause panel's dismissal of the administrative case due to insufficient evidence to support a finding of probable cause or, alternatively, whether an exception to mootness exists." Dr. Salameh urges that we address the merits because of the collateral legal consequences of a decision. Specifically, Salameh asks for a merit determination that compels the Department "to convert the documents at issue [including audio from the first hearing] from public record[s] to confidential." The Department counters that (a) the disciplinary action has been dismissed; and (b) "there is no statutory provision that would permit the Department to [prevent public disclosure of its records as to Salameh)." The Department also says that the "law clearly provides that once probable cause is found, the disciplinary proceedings become public record. There is no part of section 456.073(10) that provides that if the Department errs in its prosecution and probable cause is improvidently found, the Department can then reassert confidentiality."

II.

A.

5

Because of the importance of the legal scope of the Department's authority to prevent a serious due process violation, the merits of the central legal issue presented should be addressed despite the subsequent hearing absolving Dr. Salameh. Whether a writ of mandamus should issue and require the Department to withdraw the administrative complaint and prevent its public disclosure depends on the nature of Department's legal duties in situations where it becomes aware of a due process violation in a probable cause proceeding. That's because the writ is a judicial command that a governmental officer or governmental entity perform an act that the officer or entity has a duty to perform and that is ministerial or compulsory in nature. *See Conner v. Moran*, 278 So. 3d 790, 793 (Fla. 1st DCA 2019) ("The writ of mandamus is available only to compel a non-discretionary ministerial duty by a public official where the petitioner has no other legal remedy to obtain the relief sought."); *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So. 3d 851, 855 (Fla. 1st DCA 2013) ("Mandamus has been described as . . . 'a remedy where public officials or agencies may be coerced to perform ministerial duties that they have a clear legal duty to perform.'" (citation omitted)). If the officer or entity has discretion under the law to not perform the act, the writ may not issue; if the officer or entity has a duty to act, but has discretion in how to act, the writ may issue but may not compel the officer or entity to exercise its discretion in a specific manner. *State ex rel. Allen v. Rose*, 167 So. 21, 23 (Fla. 1936) ("Thus, while mandamus may be invoked to compel the exercise of discretion, it cannot compel such discretion to be exercised in any particular way. . . . Where the duty is discretionary, mandamus does not lie."); *see also Hunter v. Solomon*, 75 So. 2d 803, 806 (Fla. 1954) ("Mandamus in proper cases may be used to compel a public agency to exercise a discretion vested in it but generally it cannot be used to direct the public agency to act only in a certain manner."). The exercise of discretion must always be within the parameters of the applicable law. *State ex rel. Beacham v. Wynn*, 28 So. 2d 253, 254 (Fla. 1946) ("Discretion, in legal terminology, is not an unbridled prerogative possessed by either ministerial or judicial officials. It connotes the exercise of opinion and judgment circumscribed by law. Where the right is indisputable there is no room for the exercise of discretion other than in keeping with the law.").

B.

6

To begin, the Department had a problem when it learned that the probable cause panel did not have and thereby did not consider Dr. Salameh's timely-filed response in its assessment of whether probable cause existed. Dr. Salameh's counsel informed the Department that the probable cause panel acted outside the statutory framework by failing to consider Dr. Salameh's response, a point the Department did not—and does not now—dispute. Thus, even before Dr. Salameh filed his petition, the Department knew of the violation, but told Dr. Salameh that it could do nothing to prevent the pending public disclosure of the administrative complaint and its potential to irreparably harm his professional reputation. *Sheppard v. Bd. of Dentistry*, 385 So. 2d 143, 145 (Fla. 1st DCA 1980) ("The harm resulting to the holder of a professional license due to the filing of an ill-founded complaint can be irreparable and far outweigh any inconvenience or time lost by meeting the pre-filing requirements of the statute.").

What can the Department or probable cause panel do when a serious due process problem comes to their attention after a finding of probable cause but before public release of the administrative complaint? At oral argument, the Department said that neither it nor the probable cause panel has any authority or discretion to stop the release of an administrative complaint once probable cause has been found, no matter how conspicuously defective or irreparably harmful it is. For example, the Department believes it is powerless to stop public disclosure of an administrative complaint, even if it knows it is against the *wrong person* and irreparable reputational harm to that person will result. In its view, once the ten-day countdown clock starts upon a technical finding of probable cause, there is no turning back; when the trolley leaves the station, it can't be stopped or sidelined even if it is on a perilous path.[2]

---

[2] *See* *Trolley problem*, Wikipedia (https://en.wikipedia.org/wiki/Trolley_problem) ("The trolley problem is a series of thought experiments in ethics and psychology, involving stylized ethical dilemmas of whether to sacrifice one person to save a larger number" attributed to "a 1976 philosophy paper by Judith Jarvis Thomson"); *see also* Judith

The view that the Department and the probable cause panel have no authority or discretion whatsoever to prevent the public disclosure of an administrative complaint under the flawed probable cause process of this case is itself flawed. Modest alternatives are available to prevent a needless train wreck, such as withdrawing the administrative complaint or holding it in abeyance so that the Department can comply with the statutory mandate that a licensee's response be considered prior to a probable cause determination, thereby avoiding a serious due process violation. It bears repeated emphasis that the statute says the licensee's "written response *shall be considered* by the probable cause panel," § 460.073(1), Fla. Stat., making it a crucial and necessary part of the assessment of whether probable cause is established at all. Responses must be considered—as the legislation commands—because they provide "opportunities for the licensee to demonstrate to the probable cause panel why the allegations are unfounded and do not support a formal Administrative Complaint filed against the licensee by the Department." Therese A. Savona, *Uncharted Waters? An Overview of Navigating Department of Health Disciplinary Proceedings*, 39 No. 2 *Trial Advocate (FDLA)* 47, 48 (2020).

The Department claims that a rehearing by the probable cause panel—*after* public disclosure of the administrative complaint had already occurred—fulfills its duty that Dr. Salameh's response be considered. Premature public disclosure of an administrative complaint issued via a legally flawed probable cause proceeding, however, is not what the Florida legislature envisioned in (a) erecting a strict wall of confidentiality around the disciplinary process and (b) mandating consideration of a licensee's response as a critical part of that process. A finding of probable cause is premised on statutory compliance, including the mandate that a licensee's response be considered in a probable cause proceeding. *See Sheppard*, 385 So. 2d at 145 (requirement of notice to licensee before filing a license revocation complaint "is to allow a prompt repudiation by the licensee which could reveal, for example, mistakes in the identification of the licensee,

Jarvis Thomson, *The Trolley Problem*, 94 Yale L.J. 1395, 1415 (1985) (further refinement of her earlier work).

misinformation or fictitious claims, rendering the complaint ill-founded"). A belated rehearing—after potentially irreparable harm from public disclosure of a flawed administrative complaint has occurred—is no substitute for strict compliance with the mandatory duty that a timely-filed response be considered as a part of the confidential probable cause proceedings. *See id.* at 146 (noting that "the belated notice and hearing procedure ordered below is not a substitute for compliance with [statutory requirements] and will not defeat the licensee's right to dismissal of the complaint if noncompliance is properly and promptly asserted"). No judicial remedy can undo the harm that might otherwise result.

The language and structure of the disciplinary statute reflects a legislative mandate that a licensee's response be considered *during* the probable cause process, which must remain confidential until statutory pre-requisites are met. To ensure that legislative intent is achieved, Florida law provides that governmental bodies have the power to take actions that are "'necessarily or reasonably incident to the powers expressly granted.'" *Robinson v. Dep't of Health*, 89 So. 3d 1079, 1082 (Fla. 1st DCA 2012) (quoting *Hall v. Career Serv. Comm'n*, 478 So. 2d 1111, 1112 (Fla. 1st DCA 1985)).

The disciplinary statute unequivocally *requires* a probable cause panel to consider a timely-filed response from a licensee, making it reasonable, if not necessary, that an administrative complaint be withdrawn and a proceeding held in abeyance until a timely-filed response is made available to and considered by the probable cause panel. To do otherwise would thwart the central purpose of the statute, which accords confidentiality and due process to licensees until the point in time that a proper disposition of an administrative complaint is made. Just as this Court has held that an agency has an implied power to dismiss an untimely filed complaint, it is likewise the case that the Department has the implied power to withdraw or hold an administrative complaint in abeyance to ameliorate a due process violation of the type at issue here. *Robinson*, 89 So. 3d at 1082 ("Dismissal of a complaint [that the Florida Commission on Human Relations] believes to be untimely is a power necessarily incident to the power to review timely complaints.").

9

This limited power is necessarily implied from the authority granted to ensure a confidential and fair probable cause process; it is not a newfangled power or one that exceeds what the Legislature granted. Indeed, because a response "shall be considered" during the probable cause proceedings, it is an extremely modest and necessarily implied remedial power to put the process on hold to prevent not only irremediable harm to licensees but to protect the confidentiality and integrity of the process itself when serious but correctable errors are discovered prior to public disclosure. Prudence weighs in favor of the Department pressing the pause button when this type of serious violation comes to its attention; the failure to do so has inauspicious results (as this case proves) and can result in reduced confidence in the disciplinary process itself, neither of which accord with legislative intent.

Withholding public disclosure of the administrative complaint until a proper probable cause determination is made under the circumstances of this case does no harm to the statutory framework including the public meetings and records laws, both of which play important roles in Florida. Public disclosure of an administrative complaint is premised, however, on strict statutory compliance to safeguard confidentiality and due process concerns. A finding of probable cause made without consideration of a timely-filed response is—at its core—an invalid action that potentially can be remedied if discovered in time. Public disclosure should not occur if the failure to consider a timely-filed response compromises the accuracy and integrity of the probable cause process, which it did in this case.[3]

---

[3] In reaching this conclusion, it is unnecessary to address whether the initial probable cause decision was "substantially justified" because that question only arises where a licensee seeks attorneys' fees under section 57.111(3)(e), Florida Statutes (2020). *See, e.g.*, *Fish v. Dep't of Health, Bd. of Dentistry*, 825 So. 2d 421, 423 (Fla. 4th DCA 2002) (upholding determination that initial finding of probable cause was substantially justified, notwithstanding error in failing to consider licensee's response, because subsequent dismissal was not based on "any procedural irregularity" but was due to death of key witnesses; though probable cause panel should have considered the response, no

The Department points out that section 456.073(4) allows it to not prosecute a case if it finds that "probable cause has been improvidently found by the panel." § 456.073(4), Fla. Stat. It then becomes the board's responsibility to decide whether to "file a formal complaint and prosecute the complaint pursuant to chapter 120." *Id.* This statutory authority allows the Department to assess the basis for a probable cause determination and deem it improvident, which is different in kind from learning that a licensee's timely-filed response wasn't even considered as the statute mandates, rendering a finding of probable cause potentially invalid. The former is the Department's power to reassess the evidentiary record and decline prosecution; the latter is a failure to comply with a crucial part of the disciplinary statute itself, potentially nullifying the probable cause determination. As such, subsection (4) in no way addresses the current situation; nor does it foreclose the Department from exercising its implied power to remedy a serious violation of the type presented that is discovered prior to public disclosure of an administrative complaint. Nothing in the disciplinary statute establishes that the Department's powers to decline prosecution of an "improvident" probable cause determination precludes its exercise of authority to correct a due process violation that comes to its attention after a probable cause determination but before public release of an administrative complaint.

## C.

Finally, the question of remedy is muddied in this case due to the administrative complaint having been publicly disclosed without consideration of Dr. Salameh's response. As a preliminary matter, it initially appeared that a misstep may have occurred because public disclosure of the administrative complaint occurred after Dr. Salameh's petition in this Court had been filed, raising the question of whether the Department should have refrained

other evidence existed that the panel "would have reached a different result had it considered his response.").

11

from doing so given the judicial relief sought was to prohibit disclosure.

As it turns out, the petition—though electronically filed on the evening of Friday, April 2nd—did not come to the Department's attention until after public disclosure of the administrative complaint had already occurred. The Department was not provided a copy of the petition at the time of its filing on Friday and only became aware of it after receiving the electronic acknowledgement from the clerk's office on Monday morning. By then, the Department—which had pre-arranged at the prior week's end for the electronic release of administrative complaints on the following Monday—was unable to prevent release, which had just occurred.

In addition, the petition was filed without designating it as an "emergency" or a "time sensitive" matter as the e-filing portal permits; had it been designated as such, the clerk's office would have acted quickly in bringing the matter to the chief judge's or panel's attention to assess whether actions, such as a show cause order or a stay, were appropriate.[4] Moreover, Dr. Salameh did not seek a stay. Had he sought and obtained a stay or had this Court issued one on its own volition (as sometimes occurs when disclosure of confidential information is at issue), the Department would have no discretion; public disclosure would be prohibited pending disposition of proceedings in this Court; and issuance of a writ of mandamus to require consideration of Dr. Salameh's

---

[4] Contributing to the harried filing of the petition is that the Department mailed the administrative complaint to Dr. Salameh, resulting in a five-day delay that partially impaired the ability of his counsel to contact and potentially correct the violation with the Department or seek remedial judicial action. Time was critical because the Department steadfastly refused to withhold public release of the administrative complaint, despite the violation, thereby leaving Dr. Salameh with less than five days to pursue the sole avenue of available relief: the judiciary. Had he received notice of a forthcoming administrative complaint on the day probable cause was found, he would have had almost a week of additional time to act to protect his reputational interests in the court system.

response—as mandated by statute—would have been an available option.

At this point, because the administrative complaint has been publicly disclosed and the probable cause panel has subsequently reconvened and reversed its finding of probable cause based on its consideration of Dr. Salameh's response, a writ of mandamus to require compliance with the mandatory duty to consider the response as required by the disciplinary statute would serve little purpose. Harm done by the disclosure of the ill-founded administrative complaint can't be judicially repristinated; the bell once rung can't be shushed. Dr. Salameh, despite having his statutory rights violated and his reputation initially cast in doubt, has now been absolved by the finding of no probable cause for the alleged incident, thereby nullifying the administrative complaint against him in this case and restoring his stature vis-à-vis the allegations made. Better to explain what happened in this administrative proceeding now rather than allow erroneous public records to subsist to be dredged up later without rejoinder and full explanation.

––––––––––––––––––––––––––––

Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, for Petitioner.

Sarah Young Hodges, Chief Appellate Counsel, Louise R. Wilhite-St. Laurent, General Counsel, and Kimberly Lauren Marshall, Assistant General Counsel, Florida Department of Health, Tallahassee, for Respondent.