FLORIDA CARRY, INC. AND THE SECOND AMENDMENT FOUNDATION, INC.,

     Appellants/
     Cross-Appellees,

v.

CITY OF TALLAHASSEE, FLORIDA, A POLITICAL SUBDIVISION OF THE STATE OF FLORIDA; JOHN MARKS, MAYOR OF THE CITY OF TALLAHASSEE; NANCY MILLER, CITY COMMISSIONER OF THE CITY OF TALLAHASSEE; ANDREW GILLUM, CITY COMMISSIONER OF THE CITY OF TALLAHASSEE; AND GIL ZIFFER, CITY COMMISSIONER OF THE CITY OF TALLAHASSEE,

     Appellees/
     Cross-Appellants.

_____/

IN THE DISTRICT COURT OF APPEAL FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

CASE NO. 1D15-5520

Opinion filed February 3, 2017.

An appeal from the Circuit Court for Leon County.
George S. Reynolds, III, Judge.

Eric J. Friday of Fletcher & Phillips, Jacksonville; Lesley McKinney of Law Office of David M. Goldman, Jacksonville, for Appellants/Cross-Appellees.

Jason Gonzalez of Shutts & Bowen LLP, Tallahassee; Robert Dowlut, Bethseda, MD, for Amicus Curiae National Rifle Association, in support of Appellants/Cross-Appellees.

Louis C. Norvell, Assistant City Attorney, Tallahassee; Marc J. Fagel and Lauren G. Escher of Gibson, Dunn & Crutcher LLP, San Francisco, CA, for Appellees/Cross-Appellants.

Edward G. Guedes, Jamie A. Cole, and Adam Schwartzbaum of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, for Amicus Curiae City of Weston, Florida, and City of Miramar, Florida, in support of Appellees/Cross-Appellants.

Brook Dooley and David J. Rosen of Keker & Van Nest LLP, San Franciso, CA; Ruth E. Vafek of Ausley & McMullen, P.A., Tallahassee for Amici Curiae The Law Center to Prevent Gun Violence, The League of Women Voters of Florida, States United to Prevent Gun Violence, concerned local elected officials, and concerned state elected officials, in support of Appellees/Cross-Appellants.

Harry Morrison, Jr., Tallahassee; Susan H. Churuti of Bryant Miller Olive P.A., Tampa; and Elizabeth W. Neiberger of Bryant Miller Olive P.A., Miami, for Amicus Curiae The Florida League of Cities, in support of Appellees/Cross-Appellants.

LEWIS, J.

Appellants, Florida Carry, Inc. and The Second Amendment Foundation, Inc., appeal a Final Summary Judgment entered by the trial court in favor of Appellees, the City of Tallahassee ("City"), John Marks, Nancy Miller, Andrew Gillum, and Gil Ziffer. Appellants argue on appeal that the trial court erroneously determined

that section 790.33(3)(f), Florida Statutes (2013), is a standing provision rather than a provision prohibiting certain conduct and that the City's re-publication of two firearms ordinances that have been declared null and void by the Legislature's preemption of the field of firearms regulation constitutes "promulgation" as that term is used in section 790.33(3)(f) and is prohibited by law. For the reasons that follow, we reject Appellants' arguments and, therefore, affirm as to the issue raised on appeal. On cross-appeal, Cross-Appellants/Appellees assert that the trial court erred in dismissing their counterclaim wherein they asserted that section 790.33's "penalty provisions" violate the rights of absolute legislative immunity and free speech. Concluding that the trial court correctly determined that dismissal of the counterclaim was appropriate, we affirm as to the issue raised on cross-appeal as well.

*FACTUAL HISTORY*

In 1987, the State preempted the field of firearms regulation by enacting section 790.33, Florida Statutes, which provided in part that the State is "occupying the whole field of regulation of firearms and ammunition . . . to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. Any such existing ordinances, rules, or regulations are hereby declared null and void." At that time, the City had two ordinances that conflicted with the newly enacted provisions

3

of section 790.33. One of the ordinances dated back to 1957, and the other dated back to 1984. The 1957 provision is now referred to as section 12-61(a) of the Tallahassee Code and provides, "No person shall discharge any firearms except in areas five acres or larger zoned for agricultural uses." This provision was in effect in the 1957 version of the Tallahassee Code and was restated in the 2003 re-codification in its current form. The 1984 provision, which was amended in 1988, is now referred to as section 13-34(b)(5) of the Tallahassee Code and makes it unlawful for any person to discharge a firearm in a park or recreational facility owned, managed, maintained, or controlled by the City. This provision was also restated in the 2003 re-codification in its current form. Other than the restatement in the 2003 re-codification, neither section 12-61 nor section 13-34(b) has been revised or amended since 1957 and 1988, respectively. The parties stipulated that no instance of enforcement of either ordinance has been identified in the past ten years. In 2011, the Legislature amended section 790.33, creating what the parties term as "penalty provisions" against local officials involved in the enactment or enforcement of firearms regulations, including a civil fine, loss of public funds in defense of a claim, and removal from office. By memorandum dated June 30, 2011, the Tallahassee Police Chief advised all officers and all personnel within the Tallahassee Police Department that the Florida Legislature had preempted the

firearms provisions of sections 12-61 and 13-34 and that the ordinances were unenforceable.

In May 2014, Appellants filed a Complaint for Declaratory Judgment and Injunctive Relief against Appellees. In Count I, Appellants sought a declaration on the validity and enforceability of the two ordinances at issue in light of section 790.33 and an order requiring the City to repeal the ordinances. In Count II, Appellants petitioned for injunctive relief pursuant to section 790.33(3)(b), requesting that the court enjoin Appellees from enforcing and promulgating the ordinances and requiring their repeal. Count III was a claim for declaratory relief and a petition for injunctive relief pursuant to section 790.33(3)(f). Therein, Appellants alleged that at a February City Commission meeting, the individual Appellees participated in advisory discussions with the City Attorney, public comment, debate, and a vote to determine the status of the two ordinances at issue in light of the prohibitions of section 790.33. According to Appellants, the individual Appellees voted to indefinitely table the discussion of repealing the two ordinances. In Count IV, Appellants sought an injunction prohibiting the continued promulgation and enforcement of the ordinances at issue and a writ of mandamus ordering Appellees to repeal/amend the ordinances.

In Defendants' Answer and Counterclaim for Declaratory Relief, Appellees sought a declaratory judgment declaring certain portions of section 790.33

unconstitutional. Appellees asserted that the penalty provisions provided for in section 790.33 violated legislative immunity and the right of free expression. Thereafter, the parties filed motions for summary judgment as did the Attorney General who intervened in the case in order to address Appellees' counterclaim.

In the Final Summary Judgment, the trial court set forth in part:

It is undisputed the individual Defendants have done nothing to enact any ordinance or regulation relating to the use of firearms, during the time they have been in office. The big complaint against the individual Defendants is that they refused to vote on the proposed repeal of the two challenged ordinances by "tabling" the matter indefinitely.

This brings us to the issue of, can this Court compel the City Commission to "untable" the proposed repeal of the Ordinances in question and require a vote? There is little authority for a court to mandate a governing body to vote on a legislative matter before it. . . .

This Court does not believe it has the authority under the circumstances of this case to mandate the Commission to vote on the requested legislation that was previously considered and "tabled." "Laying a matter on the table" or "tabling" is a well-known and commonly used rule of procedure utilized to postpone voting on an issue under consideration and it leaves the "tabled" matter in a state of non-action. . . .

No doubt, the Commissioners in this case understood the pre-emption issue and acted defiantly in refusing to repeal the challenged ordinances, but the Court finds that tabling a request to repeal a pre-empted City Ordinance is not a violation of section 790.33(3)(a) because it is not ". . . enacting or causing to be enforced any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field . . . ." (e.s.)

Therefore, the Court finds that the individual City Commissioners are not liable, such that a mandatory fine should be

6

imposed pursuant to sec. 790.33(3)(c), F.S. because the individual Commissioners by "tabling" the matter refused to vote to repeal the challenged ordinances. So, if the individual Commissioners can't be mandated to vote on the proposed repeal of the pre-empted ordinances, can they be mandated to discontinue promulgating/publishing them in the City Code book and online as if they were valid?

After noting that there was no evidence that either ordinance was being enforced, the trial court set forth under the heading "Re-publishing does not equal 'promulgation'" the following:

> What does the word "promulgated" mean in the context in which it is used in section 790.33(3)(f), F.S.? The exact statutory usage is as follows:
>
> Section 790.33(3)(f) states as follows:
>
> > A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation. (e.s.)
>
> The Webster's New Collegiate Dictionary defines "promulgate" to mean both "to make known or public" and "to put into action or force." . . .
>
> As the law-making process has evolved so too have the definitions of the word "promulgate." The Florida 5th Judicial Circuit recently held that:
>
> > "while . . . open to various interpretations, generally the dictionary definitions of the word relate to the passage and initial publication of an ordinance, not the simple

7

presence of the ordinance within a code book." <u>Florida Carry, Inc. v. City of Leesburg, Florida</u>, 2015 WL 4945748 (2015).

This Court finds the best way to describe the word "promulgate" is as a two-fold process: first, it involves an act of legislation or law making which occurs at a single point in time; and second, it involves the act of publication and re-publication of the enacted provision. A good example of the contextual distinction to be given to the meaning of the word promulgation is found in a memorandum from the General Counsel to the United States Environmental Protection Agency which concludes that the act of promulgation is distinct from, and precedes, the act of publication. . . .

The term "publication" is defined as "the offering or distribution of copies of a work to the public." <u>Black's Law Dictionary</u>, 579 (3rd pocket ed. 2006). The older definition and understanding of the term promulgate leans more towards publication as being the meaning it should be given. After all, historically, it was the town crier's job to "promulgate" or make known to the people that a new law was in effect. . . .

Historically the word "promulgate" comes from the Latin word *promulgare*, which literally means "to milk forward," which is derived from the Latin verb *mulgere*, which means "to milk." The underlying idea and meaning of the verb *promulgare* is of "bringing out into the light of day." . . .

Based on the foregoing, the Court finds that the word "promulgated," as used in section 790.33(3)(f), F.S., does not mean to publish or re-publish, rather based on the context in which it is used "promulgated" is used in its legislative sense as in legislatively adopting or enacting an ". . . ordinance, regulation, measure, directive, rule, enactment, order, or policy."

Next, the Court must resolve whether the Defendants are in willful violation of the statute due to their continued publication and re-publication of two admittedly pre-empted ordinances: the purported "promulgation." The first question is does paragraph (f) of subsection 790.33(3), F.S. even prohibit the purported "promulgation" that

8

Plaintiffs allege?  Plaintiffs have seized upon the reference to "promulgated" in section 790.33(3)(f), which confers standing on a party.  Section 790.33(3)(f) states as follows:

> A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy <u>promulgated</u> or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages, as limited herein, caused by the violation (e.s.)

The text is clear that section 790.33(3)(f) does not by itself prohibit any specific act; it only confers standing on person(s) or organization(s) adversely affected by violations of section 790.33(3)(a).  Therefore, section 790.33(3)(f) cannot serve as the basis for any purported violation.

In contrast, paragraph (a) of section 790.33(3) clearly lays out the prohibited activity:

> ["]<u>Any person</u>, county, agency, municipality, district, or other entity that <u>violates</u> the Legislature's occupation of the whole field of regulation of firearms and ammunition, as declared in subsection (1), by <u>enacting or causing to be enforced</u> any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field <u>shall be liable</u> as set forth herein." (e.s.)

"Where the legislature includes wording in one section of a statute and not in another, it is presumed to have been intentionally excluded. . . . Even when the court determines the legislature intended something not expressed in the wording, the judiciary lacks the authority under organic law to depart from the plain meaning of an unambiguous statute." . . .  Accordingly, the Court finds that section 790.33(3)(a) – the prohibition section – only addresses ". . . enacting or causing to be enforced any local ordinance or administrative rule or regulation . . . ." and that even if the word "promulgated" as that term is used in

9

790.33(3)(f) was only given the meaning of publication it still would not fall within the ambit of the prohibitions set forth in section 790.33(3)(a).

Lastly, the Court has considered whether the city's re-codification of the challenged provisions in 2003 was a new enactment of the old challenged ordinances. Both provisions of the challenged City Code, the one enacted before and the one after the enactment of Sec. 790.33, F.S. (1987), have continued to be re-published in the City Code each year thereafter through 2015. The City re-codified its Code in 2003 and Sec. 1-10 of the City's 2003 re-codification specifically provided:

> The provisions of this Code, insofar, as they are substantially the same as legislation previously adopted by the city relating to the same subject matter, shall be construed as restatements and continuations thereof and <u>not as new enactments</u>. (e.s.)

Therefore the Court finds that the re-codification by the City in 2003 was not a new enactment or new adoption of the two challenged ordinances because the re-codification of the two ordinances in 2003 was not a new "enactment" as prohibited by section 790.33(3)(a), F.S. This Court finds that all the City is guilty of is offering or distributing, either electronically or in paper, copies of the City Code book of enacted ordinances which unfortunately contain the two challenged outdated provisions which purport to regulate firearms within the City. However, there has been no enactment of a new law by the City or the Commissioners such that it or they would be in violation of the statute.

. . . .

Contrary to Plaintiffs' assertions, the Court, for reasons stated finds no violation of 790.33(3)(a) – the prohibition section – because the City has continued to allowed [sic] the two challenged city ordinances in question to be published and re-published both in written and electronic form in spite of their pre-emption by state statute. While cleaning up the City Code so that old city ordinances which are no longer legal, relevant, or enforced are removed may be good public policy, it remains the City's prerogative – not the Plaintiffs, nor this

10

Court's.

With respect to Appellees' counterclaim, the trial court found that the "individual Defendants" were not and could not be subject to the penalty provisions of section 790.33(3) because the Commissioners refused to vote on the request to repeal the two ordinances and tabled the requested repeal by Appellants, the challenged ordinances were republished during the time the named Commissioners were in office, and the individual Commissioners were not on the City Commission at the time the two challenged ordinances were initially enacted. The court set forth in part, "Therefore, because the Court finds they are not subject to the penalty provisions, the individual Defendants have no case in controversy upon which the Court needs to address." The trial court ordered and adjudged that the ordinances are "void and unenforceable." It denied Appellants' motion for summary judgment as well as the motion for summary judgment filed by the Attorney General, it granted Appellees' summary judgment motion, and it dismissed Appellees' counterclaim. This appeal and cross-appeal followed.

*APPEAL*

Summary judgment is proper when there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is reviewed de novo. Id. Statutory construction is a question of law also

11

subject to de novo review. W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 8 (Fla. 2012). The polestar of statutory construction is legislative intent. Id. at 8-9. To discern legislative intent, a court must look first to the plain and obvious meaning of the statute's text, which may be discerned from a dictionary. Id. at 9. If the language of the statute is clear and unambiguous and conveys a clear and definite meaning, a court must apply the unequivocal meaning and not resort to the rules of statutory construction. Id. If, however, an ambiguity exists, a court should look to the rules of statutory construction to help interpret legislative intent, which includes the examination of a statute's legislative history and the purpose behind its enactment. Id.

Article I, Section 8(a) of the Florida Constitution provides, "The right of the people to keep and bear arms in defense of themselves and of the lawful authority of the state shall not be infringed, except that the manner of bearing arms may be regulated by law." As we have explained, "The phrase 'by law' indicates that the regulation of the state right to keep and bear arms is assigned to the legislature and must be enacted by statute." Fla. Carry, Inc. v. Univ. of N. Fla., 133 So. 3d 966, 972 (Fla. 1st DCA 2013). Section 790.33, Florida Statutes (2013), the pertinent provision for purposes of this appeal, is entitled "Field of regulation of firearms and ammunition preempted" and provides:

> (1) PREEMPTION.—Except as expressly provided by the State Constitution or general law, the Legislature hereby declares that it is

12

occupying the whole field of regulation of firearms and ammunition, including the purchase, sale, transfer, taxation, manufacture, ownership, possession, storage, and transportation thereof, to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto. **Any such existing ordinances, rules, or regulations are hereby declared null and void**.

(2)  POLICY AND INTENT.—

(a)  It is the intent of this section to provide uniform firearms laws in the state; to declare all ordinances and regulations null and void which have been enacted by any jurisdictions other than state and federal, which regulate firearms, ammunition, or components thereof; to prohibit the enactment of any future ordinances or regulations relating to firearms, ammunition, or components thereof unless specifically authorized by this section or general law; and to require local jurisdictions to enforce state firearms laws.

(b)  It is further the intent of this section to deter and prevent the violation of this section and the violation of rights protected under the constitution and laws of this state related to firearms, ammunition, or components thereof, by the abuse of official authority that occurs when enactments are passed in violation of state law or under color of local or state authority.

(3)  PROHIBITIONS; PENALTIES.—

**(a)  Any person, county, agency, municipality, district, or other entity that violates the Legislature's occupation of the whole field of regulation of firearms and ammunition, as declared in subsection (1), by enacting or causing to be enforced any local ordinance or administrative rule or regulation impinging upon such exclusive occupation of the field shall be liable as set forth herein.**

(b)  If any county, city, town, or other local government violates this section, the court shall declare the improper ordinance, regulation, or rule invalid and issue a permanent injunction against the local government prohibiting it from enforcing such ordinance, regulation, or rule. It is no defense that in enacting the ordinance, regulation, or rule the local government was acting in good faith or upon advice of counsel.

(c)  If the court determines that a violation was knowing and willful, the court shall assess a civil fine of up to $5,000 against the elected or

appointed local government official or officials or administrative agency head under whose jurisdiction the violation occurred.

(d)    Except as required by applicable law, public funds may not be used to defend or reimburse the unlawful conduct of any person found to have knowingly and willfully violated this section.

(e)    A knowing and willful violation of any provision of this section by a person acting in an official capacity for any entity enacting or causing to be enforced a local ordinance or administrative rule or regulation prohibited under paragraph (a) or otherwise under color of law shall be cause for termination of employment or contract or removal from office by the Governor.

(f)    **A person or an organization whose membership is adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation of this section may file suit against any county, agency, municipality, district, or other entity in any court of this state having jurisdiction over any defendant to the suit for declaratory and injunctive relief and for actual damages**, as limited herein, caused by the violation. A court shall award the prevailing plaintiff in any such suit:

1.    Reasonable attorney's fees and costs in accordance with the laws of this state, including a contingency fee multiplier, as authorized by law; and

2.    The actual damages incurred, but not more than $100,000.

(Emphasis added).

Appellants first contend that the trial court erred in agreeing with Appellees that subsection (3) of section 790.33 contains distinct prohibition, penalty, remedy, and standing provisions. According to Appellants' interpretation, subsections (3)(a) through (f) contain both prohibitions and penalties without any separation or distinction as to whether a particular subdivision is a prohibition or penalty. They then assert that the act of promulgation, as referred to in section 790.33(3)(f), is prohibited. We disagree with Appellants' arguments for the following reasons.

14

Section 790.33(3)(a) clearly sets forth what is prohibited by law, which is the enactment or enforcement of firearms regulations, whereas section 790.33(3)(f) addresses standing to sue any county, agency, municipality, district or other entity for declaratory and injunctive relief and damages. Indeed, the Fourth District recently described subsection (3)(f) as "creat[ing] a private cause of action for declaratory and injunctive relief as well as actual damages . . . ." Dougan v. Bradshaw, 198 So. 3d 878, 881 (Fla. 4th DCA 2016). Appellants contend that the trial court's interpretation that section 790.33(3)(f) does not prohibit any activity renders the subsection meaningless and absurd because, under that interpretation, Appellants would have standing "where a local government has promulgated an ordinance, but that the continued promulgation itself is not a violation of the statute." The problem with this argument, however, is that the Legislature rendered the ordinances at issue null and void. See § 790.33(1), Fla. Stat. ("Any such existing ordinances, rules, or regulations are hereby declared null and void."). Thus, while the ordinances may still be "on the books," they are unenforceable and invalid. Because it is undisputed that Appellees did not enforce or enact the ordinances at issue, the only two acts prohibited by section 790.33(3)(a), Appellees were entitled to summary judgment.

As the trial court reasoned, even if section 790.33(3)(f) could be construed as containing prohibited acts, summary judgment in Appellees' favor would still have

15

been appropriate given that the re-publication of the ordinances and their existence in the City's Code does not constitute promulgation. In support of their interpretation of "promulgated," Appellants cite State v. Watso, 788 So. 2d 1026, 1027 (Fla. 2d DCA 2001), where the State appealed an order dismissing the charge of providing false information during the attempted purchase of a firearm in violation of section 790.065(12), Florida Statutes (Supp. 1998). The trial court dismissed the charge after finding that the Florida Department of Law Enforcement ("FDLE") had failed to properly promulgate the form required by section 790.065(1)(a), Florida Statutes; the statute describes the required form as being "promulgated by the Department of Law Enforcement." Id. The Second District held that FDLE did properly promulgate the form at issue but affirmed on other grounds. Id. In holding such, the Second District noted that rather than creating its own form to satisfy the requirements of section 790.065(1)(a), FDLE chose to adopt a form already created by a federal agency. Id. The Second District rejected the appellee's argument that the term "promulgate" meant "create." Id. at 1027-28. The court reasoned that FDLE "simply had to 'declare or announce publicly' what form was to be used to carry out the statutory requirements." Id. at 1028.

Although Watso addressed the term "promulgated" as used in another provision of chapter 790, which addresses weapons and firearms, the statutory provision at issue there addressed the promulgation of forms. It did not address

16

rules, ordinances, and regulations as does section 790.33. Black's Law Dictionary defines "promulgate" as follows:

> **1.** To declare or announce publicly; to proclaim. **2.** To put (a law or decree) into force or effect. **3.** (Of an administrative agency) to carry out the formal process of rulemaking by publishing the proposed regulation, inviting public comments, and approving or rejecting the proposal.

Black's Law Dictionary (10th ed. 2014). The trial court in this case cited the Webster's New Collegiate Dictionary definitions of "promulgate," which are "to make known or public" and "to put into action or force." The trial court concluded that the word "promulgated," as used in section 790.33, did not mean to publish or re-publish, but "rather based on the context in which it is used 'promulgated' is used in its legislative sense as in legislatively adopting or enacting . . . ."

A review of the different ways "promulgate" has been used throughout the Florida Statutes establishes that the context in which the word is used must be evaluated in determining the Legislature's intent as to the word's meaning. For instance, in certain circumstances, the Legislature has used the word "promulgate" in the context of creating or enacting rules and the like. See § 14.021(1), Fla. Stat. ("The Governor of Florida is hereby authorized and empowered to promulgate and enforce such emergency rules and regulations as are necessary . . . ."); § 255.256, Fla. Stat. ("The department shall promulgate rules for energy performance indices as defined in s. 255.253(3) . . . ."); § 322.63(3)(b)12., Fla. Stat. ("Promulgate rules

17

for the administration and implementation of this section . . . ."); § 195.073, Fla. Stat. ("The department shall promulgate uniform definitions for all classifications."); § 255.255(3), Fla. Stat. ("To determine the life-cycle costs . . ., the department shall promulgate rules that shall include . . . ."); § 404.056(6), Fla. Stat. ("The department shall have the authority to promulgate rules necessary to carry out the provisions of this section, including the definition of terms.").

In other contexts, the Legislature has differentiated between promulgation and publishing. See § 212.0305(3)(f), Fla. Stat. ("The department shall promulgate such rules and shall prescribe and publish such forms as may be necessary to effectuate the purposes of this section."); § 14.021(2), Fla. Stat. ("Whenever the Governor shall promulgate emergency rules and regulations, such rules and regulations shall be published and posted during the emergency in the area affected . . . ."); § 316.304(3), Fla. Stat. ("The Department of Highway Safety and Motor Vehicles shall promulgate, by administrative rule, standards and specifications for headset equipment the use of which is permitted under this section. The department shall inspect and review all such devices submitted to it and shall publish a list by name and type of approved equipment.); § 288.1258(4)(c), Fla. Stat. ("The Department of Revenue may promulgate such rules and shall prescribe and publish such forms as may be necessary to effectuate the purposes of this section . . . ."); § 336.025(2)(a), Fla. Stat. ("The department has the authority to prescribe and publish all forms upon

18

which reports shall be made to it and other forms and records deemed to be necessary . . . and shall promulgate such rules as may be necessary . . . .").

While the foregoing statutes support Appellees' argument and the trial court's interpretation that "promulgate" means something akin to the creation or enactment of a regulation or ordinance, in section 552.13, Florida Statutes, the Legislature set forth in part, "The division shall make, promulgate, and enforce regulations setting forth minimum general standards . . . ." <u>See also</u> § 379.2223(1), Fla. Stat. ("The Fish and Wildlife Conservation Commission is authorized to make, adopt, promulgate, amend, repeal, and enforce all reasonable rules and regulations . . . ."); § 379.248(4), Fla. Stat. ("The commission is authorized and empowered to make, promulgate, and put into effect all rules and regulations . . . notice of all rules, regulations, and orders . . . adopted by the commission shall be published in a newspaper of general circulation . . . ."). These statutes indicate that the Legislature intended the word "promulgate" in the given circumstances to mean something akin to proclaiming or declaring.

After considering the context in which the term "promulgated" is used in section 790.33(3)(f), we agree with the trial court's interpretation. While we are aware of the maxim that "legislative use of different terms in different portions of the same statute is evidence that different meanings were intended," <u>see</u> <u>Rollins v. Pizzarelli</u>, 761 So. 2d 294, 299 (Fla. 2000), we are guided by the fact that the

19

Legislature was primarily concerned with the enactment of local regulations and ordinances in the field of firearms regulation. If "promulgated" is construed to mean something different than "enacted" in this context, then those persons or entities who are adversely affected could sue for something that was not expressly prohibited by section 790.33(3)(a).

In support of its interpretation, the trial court cited a Fifth Judicial Circuit Court case where the trial court addressed the statute and a certain provision of the Leesburg Code of Ordinances, which, according to the court, was repealed in light of section 790.33. See Fla. Carry, Inc. v. City of Leesburg, Fla., No. 2012-CA-001001, 2015 WL 4945748, at *1 (Fla. 5th Cir. Ct. May 13, 2015). The trial court concluded that section 790.33, "although a somewhat lengthy statute," contained only one brief subsection – subsection (a) – actually prohibiting actions by local governments and listing activities that would subject them to liability under the statute. Id. Because the plaintiff offered no evidence demonstrating that the City of Leesburg enacted the ordinance at issue or caused it to be enforced after the effective date of section 790.33, the trial court found that the City had not violated the statute. Id. After noting that the plaintiff initially demanded the repeal of the ordinance, the trial court set forth, "[N]othing in the statute mandates repeal of any ordinance, in fact the word 'repeal' does not even appear in the statute. Rather, the statute [declared existing ordinances, rules, or regulations null and void]. It would

20

be inconsistent, and nonsensical, to require the repeal of an ordinance the Legislature has already declared void." Id. After noting that the repeal of the ordinance rendered the plaintiff's request to enjoin the defendants moot, the court also set forth, "The request for an injunction is also moot because the Ordinance was already nullified and made void by the express language of s. 790.33." Id. The trial court further set forth:

> 8. Plaintiff also claimed the mere presence of the Ordinance in the City of Leesburg's code book was a violation of § 790.33, relying on subsection 3(f) which states that a person or organization adversely affected by an ordinance "… promulgated or caused to be enforced in violation of this section …" may file an action seeking relief under the statute. This argument fails on at least three grounds. First, subsection 3(f) is a remedies provision, not one proscribing any particular conduct. Second, while the word "promulgate" is open to various interpretations, generally the dictionary definitions of the word relate to the passage and initial publication of an ordinance, not the simple presence of the ordinance within a code book. For example, Webster's New World College Dictionary contains this definition: "… to make known the terms of (a new or proposed law or statute); to put (a law) into effect by publishing its terms." The Ordinance was published, and thereby put into effect, at the time of its adoption, not on a daily basis since its adoption by the mere presence of the Ordinance in the code book. The position taken by Plaintiff, that the Ordinance is "promulgated" each and every day it remains in the City of Leesburg's code book, is rejected as being materially at variance with the normal and ordinary meaning of the word "promulgate."

Id. at *1-2. The Fifth District per curiam affirmed the trial court's decision in an unpublished disposition. See Fla. Carry, Inc. v. City of Leesburg, Fla., 197 So. 3d 562, 562 (Fla. 5th DCA 2016).

As did the trial court, we agree with the Fifth Judicial Circuit's reasoning.

21

While Appellants' frustration with the City's inaction and the individual Appellees' unwillingness to engage in what some might describe as a simple task of repealing void ordinances is understandable, section 790.33, as it currently stands, does not prohibit the re-publication or re-printing of the void ordinances. Instead, the more reasonable interpretation of "promulgated," as the term is used in section 790.33(3)(f), is that the ordinances at issue were promulgated at the time they were enacted and initially published. The fact that Appellees refused to remove the ordinances from the City's Code does not constitute prohibited conduct under the statute.

In their second and related issue, Appellants contend that the trial court erred in granting summary judgment in Appellees' favor because a deprivation of a constitutional right is by definition an injury and an adverse effect. After contending that the trial court was incorrect in finding that the 1957 and 1984 enactments of the preempted ordinances were lawful and not enacted ultra vires, Appellants aver that summary judgment in Appellees' favor despite their admitted failure to cease promulgation of the ordinances was contrary to both the express terms of and the express policy and intent behind section 790.33. However, the issue of whether or not the ordinances were lawful when they were enacted need not be addressed given that the Legislature rendered the ordinances null and void and the issue moot. For the reasons previously stated, Appellants' contention that Appellees have engaged

in promulgation of the ordinances since 2011 is meritless.

In their third and final issue, Appellants contend that the trial court's Final Summary Judgment declaring the ordinances null and void should have resulted in at least a partial summary judgment in their favor, thereby making them the prevailing parties for the purpose of awarding attorney's fees and costs. This contention is also meritless. While the trial court did "order and adjudge" that the two ordinances were void and unenforceable, section 790.33 rendered "existing" ordinances null and void. The primary relief sought by Appellants was a declaration that the continued publication of the ordinances was prohibited and an accompanying injunction enjoining any future publication of such. Because the trial court declined to award such relief, Appellants were not entitled to attorney's fees and costs.

*CROSS-APPEAL*

Turning to the cross-appeal, Cross-Appellants/Appellees contend that the trial court erred in dismissing their counterclaim wherein they asserted that the penalty provisions contained within section 790.33(3)(c)-(e) violated the principles of absolute legislative immunity and their right to free speech. In declining to address the counterclaim, the trial court relied upon the long-subscribed principle of judicial restraint requiring courts to avoid considering a constitutional question when a case can be decided on non-constitutional grounds. See <u>Inquiry Concerning a Judge, re</u>

Gregory P. Holder, 945 So. 2d 1130, 1133 (Fla. 2006). To be entitled to a declaratory judgment, one must demonstrate that "(1) a good-faith dispute exists between the parties; (2) he presently has a justiciable question concerning the existence or non-existence of a right or status, or some fact on which such right or status may depend; (3) he is in doubt regarding his right or status . . .; and (4) a bona-fide, actual, present, and practical need for the declaration exists." Rhea v. Dist. Bd. of Trs. of Santa Fe Coll., 109 So. 3d 851, 859 (Fla. 1st DCA 2013). When a trial court dismisses a count in a complaint seeking a declaratory judgment or declines to address the claim, the trial court's ruling is accorded great deference. Abruzzo v. Haller, 603 So. 2d 1338, 1339 (Fla. 1st DCA 1992). As such, the standard of review as to the dismissal of a declaratory judgment claim is whether the trial court abused its discretion. Id.

In determining that there was no case or controversy to address with respect to Cross-Appellants/Appellees' counterclaim, the trial court relied upon its determination that the individual Cross-Appellants/Appellees were not and could not be subject to the provisions of section 790.33(3) because there "has been no enactment or adoption of a new ordinance relating to the regulation of firearms that they voted to enact or adopt" and because the continued re-publication of ordinances enacted years before the enactment of section 790.33(3) did not constitute promulgation as the term is used in section 790.33(3)(f). We find no abuse of

24

discretion in the trial court's dismissal of the counterclaim. Had this been a situation where Cross-Appellants/Appellees were penalized through a fine, denied the use of public funds for their legal defense, or removed from office by the Governor, the counterclaim would certainly need to be addressed. However, not only was there no violation of section 790.33(3)(a) that has occurred in this case, but there were also no penalties imposed. As such, no bona-fide, actual, present, and practical need exists for the declaration sought by Cross-Appellants/Appellees.

*CONCLUSION*

Based upon the foregoing, we conclude that the trial court properly granted summary judgment in Appellees' favor and did not abuse its discretion in dismissing the counterclaim filed by Cross-Appellants/Appellees. Accordingly, we affirm the Final Summary Judgment.

AFFIRMED.

BILBREY and WINOKUR, JJ., CONCUR.

25