DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FREDRICK GUTTENBERG** and **JENNIFER GUTTENBERG,**
as Co-Personal Representatives of the
**ESTATE OF JAIME T. GUTTENBERG**,
Appellants,

v.

**SMITH & WESSON CORP.,** n/k/a **SMITH & WESSON SALES
COMPANY, INC.,** and **SUNRISE TACTICAL SUPPLY, LLC,**
Appellees.

No. 4D21-2268

[January 4, 2023]

Appeal from the Seventeenth Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T. Case No. CACE18-12475.

Stephen F. Rosenthal of Podhurst Orseck, P.A., Miami, for appellants.

William P. Geraghty, Daniel B. Rogers, and Michael G. Polatsek of Shook, Hardy & Bacon L.L.P., Miami, and Christopher G. Oprison of DLA Piper LLP, Miami, for appellee Smith & Wesson Corp. n/k/a Smith & Wesson Sales Company, Inc.

FORST, J.

Appellants Fredrick and Jennifer Guttenberg appeal the trial court's order dismissing Appellants' complaint for declaratory relief. There is a line between an acceptable claim for declaratory judgment and an unacceptable request for a court to provide an "advisory opinion." That line is drawn without regard to the substantive merits of a potential cause of action. Here, the trial court concluded that Appellants were requesting the latter. We agree and accordingly affirm, without commenting on the viability of any potential claim(s) that may be filed by Appellants against Appellees.

**Background**

Appellants' fourteen-year-old daughter was one of the seventeen victims senselessly killed by gunfire on February 14, 2018, at Marjory

Stoneman Douglas High School. An additional seventeen individuals were wounded and survived.

Later that year, Appellants filed a complaint for declaratory relief against Appellees Smith & Wesson and Sunrise Tactical Supply, the manufacturer and seller, respectively, of the firearm used by the gunman on that tragic day. Within the complaint, Appellants explained that they "wish[ed] to sue" Appellees for "their role in manufacturing, marketing, and selling the M&P 15 semi-automatic rifle" that was used to kill their daughter, premised on the contention that Appellees were "legally responsible for their complicity in the entirely foreseeable, deadly use of the assault-style weapons they place on the market."

However, the complaint recognized a potential obstacle—the first two subsections of section 790.331, Florida Statutes (2018), and the "automatic sanction" created by subsection (6)(b) of that statute. Section 790.331 is titled "Prohibition of civil actions against firearms or ammunition manufacturers, firearms trade associations, firearms or ammunition distributors, or firearms or ammunition dealers." The pertinent provisions of section 790.331 are as follows:

> (1) The Legislature finds and declares that the manufacture, distribution, or sale of firearms and ammunition by manufacturers, distributors, or dealers duly licensed by the appropriate federal and state authorities is a lawful activity and is not unreasonably dangerous, and further finds that the unlawful use of firearms and ammunition, rather than their lawful manufacture, distribution, or sale, is the proximate cause of injuries arising from their unlawful use.

> (2) Except as permitted by this section, a legal action against a firearms or ammunition manufacturer, firearms trade association, firearms or ammunition distributor, or firearms or ammunition dealer on behalf of the state or its agencies and instrumentalities, or on behalf of a county, municipality, special district, or any other political subdivision or agency of the state, for damages, abatement, or injunctive relief resulting from or arising out of the lawful design, marketing, distribution, or sale of firearms or ammunition to the public is prohibited. However, this subsection does not preclude a natural person from bringing an action against a firearms or ammunition manufacturer, firearms trade association, firearms or ammunition distributor, or firearms or ammunition dealer for breach of a written contract, breach of

2

an express warranty, or injuries resulting from a defect in the materials or workmanship in the manufacture of a firearm or ammunition.

(3) A county, municipality, special district, or other political subdivision or agency of the state may not sue for or recover from a firearms or ammunition manufacturer, firearms trade association, firearms or ammunition distributor, or firearms or ammunition dealer damages, abatement, or injunctive relief in any case that arises out of or results from the lawful design, marketing, distribution, or sale of firearms or ammunition to the public.

. . . .

(6)(b) In any civil action where the court finds that the defendant is immune as provided in this section, the court shall award the defendant all attorney's fees, costs and compensation for loss of income, and expenses incurred as a result of such action.

§ 790.331 (1), (2), (3), (6)(b), Fla. Stat. (2018).

Appellants contend that section 790.331 prohibits (and potentially punishes) only suits by state actors against firearms manufacturers, not those brought by private citizens. Nevertheless, Appellants were hesitant to test that theory by filing their tort claims against Appellees, as a lawsuit might subject them to the sanctions provided in section 790.331(6)(b) if the trial court found Appellees were immune from suit.

As a result, Appellants filed the instant complaint for declaratory relief, requesting that the trial court declare section 790.331 "is inapplicable and does not prohibit *an individual person* from bringing any cause of action for damages, abatement, or injunctive relief against a firearms manufacturer, distributor, or dealer arising out of their design, marketing, distribution, or sale of firearms to the public." (emphasis added). Alternatively, Appellants requested that the trial court declare subsections 790.331(2), (3), and (6) unconstitutional under the Florida Constitution because they violate Appellants' constitutional right of access to courts.

Appellees moved to dismiss the complaint, arguing that Appellants did not show a present adversity or conflict which would entitle them to declaratory relief, and as a result, the trial court was without jurisdiction to address the merits of Appellants' claims. Appellees never offered an

interpretation of the statute as to whether they were immune from suit, focusing solely on the jurisdiction argument.

Ultimately, the trial court dismissed Appellants' complaint for declaratory relief on the basis that the court lacked jurisdiction, and never reached the issue of whether section 790.331 barred claims from private citizens nor whether certain provisions of section 790.331 were unconstitutional. Specifically, the trial court found that Appellants' complaint for declaratory relief was an impermissible attempt to solicit "legal advice to help them decide whether they should file a suit," and that Appellants would have to test their claims in an adversarial proceeding if they wished to establish jurisdiction. This appeal followed.

## Analysis

### A. Standard of Review

"Generally, the standard of review of a dismissal for failure to state a cause of action is de novo. However, in cases where the complaint seeks declarative relief, the standard of review is abuse of discretion." *Acad. Express, LLC v. Broward County*, 53 So. 3d 1188, 1190 (Fla. 4th DCA 2011) (citations omitted); *accord Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981) (internal citations omitted) ("[T]he granting of [declaratory] relief remains discretionary with the [trial] court, and not the right of a litigant as a matter of course. The court's ruling is accorded great deference, and appellants have the burden of showing clear error for reversal."); *Fla. Carry, Inc. v. City of Tallahassee*, 212 So. 3d 452, 465 (Fla. 1st DCA 2017) ("When a trial court dismisses a count in a complaint seeking a declaratory judgment or declines to address the claim, the trial court's ruling is accorded great deference. As such, the standard of review as to the dismissal of a declaratory judgment claim is whether the trial court abused its discretion.").

Notwithstanding, we also have recognized that "to the extent that the dismissal is based upon a legal determination, our review is de novo." *Goldman v. Lustig*, 237 So. 3d 381, 384 (Fla. 4th DCA 2018) (quoting *Bloch v. Del Rey*, 208 So. 3d 189, 192 (Fla. 3d DCA 2016)).

"The test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all." *S. Riverwalk Invs., LLC v. City of Fort Lauderdale*, 934 So. 2d 620, 622 (Fla.

4

4th DCA 2006) (quoting *Golf Club v. City of Plantation*, 717 So. 2d 166, 171 (Fla. 4th DCA 1998)).

### B. Elements required to obtain a declaratory judgment

"A declaratory judgment is a statutorily created remedy." *Martinez v. Scanlan*, 582 So. 2d 1167, 1170 (Fla. 1991). Chapter 86, Florida Statutes (2018), governs declaratory actions and "[i]ts purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." § 86.101, Fla. Stat. (2018).

Declaratory relief affords any person "whose rights, status, or other equitable or legal relations" that "are affected by a statute" to determine any question of construction or validity arising under that statute, and "obtain a declaration of rights, status, or other equitable or legal relations thereunder." § 86.021, Fla. Stat. (2018).

However, the Florida Supreme Court has explained that individuals seeking declaratory relief must show that:

> there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest[s] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. *These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.*

*Martinez*, 582 So. 2d at 1170 (quoting *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952)). Accordingly, "although a court may entertain a declaratory action regarding a statute's [construction or] validity, there must be a bona fide need for such a declaration based on present, ascertainable facts or the court lacks jurisdiction to render declaratory relief." *Id.* (citing *Ervin v. Taylor*, 66 So. 2d 816 (Fla. 1953)).

5

> Even though the legislature has expressed its intent that the declaratory judgment act should be broadly construed, there still must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction. Otherwise, any opinion on a statute's validity would be advisory only and improperly considered in a declaratory action.

*Id.* at 1170–71.

In the context of a complainant seeking declaratory relief regarding the construction or validity of a statute, courts have held that a present controversy will exist only if the underlying matter involves a violation of that statute and/or penalties resulting therefrom. For example, in *Florida Carry*, the First District Court of Appeal set out a four-element test, derived from *May v. Holley*, for determining "entitle[ment] to a declaratory judgment":

> [O]ne must demonstrate that "(1) a good-faith dispute exists between the parties; (2) he presently has a justiciable question concerning the existence or non-existence of a right or status, or some fact on which such right or status may depend; (3) he is in doubt regarding his right or status[;] . . . and (4) a bona-fide, actual, present, and practical need for the declaration exists."

*Fla. Carry, Inc.*, 212 So. 3d at 465 (alteration in original) (quoting *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So.3d 851, 859 (Fla. 1st DCA 2013)).

### C. Appellants have not demonstrated entitlement to a declaratory judgment

*Florida Carry* also involved section 790.33, Florida Statutes (2013), which is titled "Field of regulation of firearms and ammunition preempted." There, two "gun rights" organizations sued Tallahassee local government officials for noncompliance with the statute's provision that the State is "occupying the whole field of regulation of firearms and ammunition . . . to the exclusion of all existing and future county, city, town, or municipal ordinances or any administrative regulations or rules adopted by local or state government relating thereto," and declaring "[a]ny such existing ordinances, rules, or regulations . . . null and void." 212 So. 3d at 455. The defendants filed a counterclaim challenging the statute's provision imposing civil damage penalties against local officials who pass gun

control ordinances which, as one commentator put it, "ran afoul of the state's preemption statute." Bradley Pough, *Understanding the Rise of Super Preemption in State Legislatures*, 34 J.L. & POL. 67, 68 (2018); *Fla. Carry, Inc.*, 212 So. 3d at 456.

Addressing the counterclaim, the First District concluded that "not only was there no violation of [the statute] that ha[d] occurred in th[e] case, but there were also no penalties imposed. As such, no bona-fide, actual, present, and practical need exist[ed] for the declaration sought by [the complainants]." *Fla. Carry, Inc.*, 212 So. 3d at 466.

Here, Appellants have refrained from filing any tort claims against Appellees which could potentially violate section 790.331 and lead to the imposition of "penalties," opting instead to file the instant complaint for declaratory relief to determine whether their *potential* tort claims, *if filed*, would constitute a violation of the statute and subject them to liability.[1] Thus, we cannot conclude "a good-faith dispute exists between the parties" or "a bona-fide, actual, present, and practical need for the declaration exists." We agree with the trial court that the holding in *International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd* is on point:

> Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. *That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance that a statute does not govern hypothetical situations that may or may not make the challenged statute applicable.* Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function. Since we do not have on the record before us a controversy appropriate for adjudication, the judgment of the District Court must be vacated, with directions to dismiss the complaint. It is so ordered.

347 U.S. 222, 223–24 (1954) (emphasis added) (internal citations omitted); *see also Ervin v. City of N. Miami Beach*, 66 So. 2d 235, 236–37 (Fla. 1953) ("In other words, if the construction or validity of a statute . . . is drawn in

---

[1] Appellees never offered an interpretation of the statute as to whether they were immune from suit, focusing solely on the jurisdiction argument.

question, the courts will not entertain an action based thereon, seeking a determination as to either the construction or the validity thereof, where there is no controversy as to the violation of such statute . . . . In these circumstances there is no justiciable controversy." (quoting 1 WALTER A. ANDERSON, ACTIONS FOR DECLARATORY JUDGMENTS (2d ed. 1951)).

As in *Boyd* and *Ervin*, in the absence of controversy as to an actual violation of section 790.331, the instant case does not, in its present posture, present a "justiciable controversy" appropriate for declaratory relief.

In reaching this conclusion, we recognize Appellants' argument that situations exist in which, even where no present controversy exists involving a statutory violation, courts have recognized that a complainant may nevertheless be entitled to declaratory relief under the "ripening seeds of a controversy doctrine":

> [I]t is clear that to constitute an actual controversy so as to render [a declaratory relief action] applicable, there need not exist an actual right of action on one party against the other in which consequential relief might be granted. "In a number of cases it has been held and in others intimated that the appearance of 'ripening seeds of a controversy' is sufficient. Within this rule the 'ripening seeds of a controversy' appear where the claims of the several parties in interest are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between such parties as to their legal rights have not yet reached the stage of an actual controversy," which involves the active pressing of the claim on the one side and active opposition thereto on the other. The rule has been laid down broadly that a claim of a legal or equitable right on the one hand and its denial on behalf of an adverse interest constitute a case for proceeding for a declaratory judgment.

*Ready v. Safeway Rock Co.*, 24 So. 2d 808, 811 (Fla. 1946) (Brown, J, concurring specially) (citation omitted).

However, the ripening seeds of controversy doctrine is

> not a broad exception to the requirement of adversity or conflict. While one may seek a declaration of his or her rights without an allegation of actual injury, an aggrieved party must nonetheless make some showing of a real threat of immediate

injury, rather than a general, speculative fear of harm that may possibly occur at some time in the indefinite future.

*State v. Fla. Consumer Action Network*, 830 So. 2d 148, 152 (Fla. 1st DCA 2002).

Therefore, to demonstrate "ripening seeds of controversy," the complainant must make some showing of immediate injury or at least show that litigation in the near future is unavoidable. *See S. Riverwalk Invs., LLC*, 934 So. 2d at 623. "[I]t is well settled that, 'Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, [and] rest in the future.'" *Santa Rosa Cnty. v. Admin. Com'n, Div. of Admin. Hearings*, 661 So. 2d 1190, 1193 (Fla. 1995) (alteration in original) (quoting *LaBella v. Food Fair, Inc.*, 406 So. 2d 1216, 1217 (Fla. 3d DCA 1981); *see also Fla. Soc'y of Ophthalmology v. State, Dep't of Pro. Regul.*, 532 So. 2d 1278, 1279 (Fla. 1st DCA 1988) ("[A] suit under the declaratory judgment act must allege an actual controversy based on real facts, not assumptions. . . . An action for declaratory judgment will not be permitted to give rise to a mere advisory opinion.").

In the instant case, we cannot say that future harm or litigation is unavoidable because Appellants could decline to file their potential tort claims against Appellees or the latter may decline to rely upon section 790.331 in answering the complaint. In either event, Appellants would not be exposed to any potential liability from the statute's sanctions. When a claim of unavoidable harm or litigation rests on pure speculation as to what might happen, no ripening seeds of controversy exist, as the complainant is essentially seeking an advisory opinion. Such an opinion violates the requirement that a justiciable controversy exist, because an advisory opinion is not "based upon some definite and concrete assertions of right, the contest thereof involving the legal or equitable relations of parties having adverse interests with respect to which the declaration is sought." *Apthorp v. Detzner*, 162 So. 3d 236, 241 (Fla. 1st DCA 2015).

To reiterate, Appellants' claim of unavoidable harm or litigation is speculative as many contingencies and unknowns must occur before a trial court may determine the applicability of section 790.331 to a complaint filed by Appellants against Appellees. Appellants' complaint for declaratory relief is, in essence, an attempt to obtain an advisory opinion on the merits of a *potential* affirmative defense that Appellees *might* raise in later litigation. As such, Appellants' complaint does not present a

9

justiciable controversy for which declaratory relief would be appropriate. *See Calderon v. Ashmus,* 523 U.S. 740, 747 (1998) ("[R]espondent here seeks a declaratory judgment as to the validity of a defense the State may, or may not, raise in a habeas proceeding. Such a suit does not merely allow the resolution of a 'case or controversy' . . . but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense.").

## Conclusion

As set forth above, Appellants have failed to demonstrate the existence of a bona fide need for a declaratory judgment as to the construction and validity of section 790.331. We find no clear error in the trial court's dismissal of Appellants' complaint for declaratory relief.

*Affirmed.*

MAY and DAMOORGIAN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

10